Foster, J.
(dissenting). I am impelled to disagree Avith the vícavs and conclusions expressed in the majority opinion. It is true that the notices of violations of the Westchester Sanitary Code had been filed with respect to drainage and septic tank failures on properties developed by plaintiff, but such notices by no means constituted conclusive proof of fault. The Director of Sanitation for the county admitted in his testimony that some of such failures were probably due to improper overloading on the part of the homeowners themselves. It seems rather clear that plaintiff entered into the agreement in question rather than litigate the issue of fault as to the septic tank failures, and also to release the notices of violations for the purpose of selling other properties. It is equally clear that the county, represented by its Director of Sanitation, was willing to adopt the same course.
The agreement executed by the parties provided for certain specific action on the part of plaintiff: (1) to engage a qualified engineer to make an examination of the drainage swale problem and to follow his recommendations in connection therewith; (2) to guarantee septic tank installations for one year of normal use, and, in connection therewith, to follow the findings of the engineer subject to the concurrence of the Director of Sanitation; and (3) to deposit about $10,000 in escrow as a guarantee of performance. Upon the execution of the agreement, the notices of violations were released.
*326 It is conceded that plaintiff engaged a competent engineer to make an examination of the problems involved and suggest corrective procedures. There is proof, and indeed the defendant so admits, that the engineer retained submitted four plans, one of which, ‘ ‘ Plan D ’ ’, was satisfactory to both parties to the agreement. Implicit must have been the understanding of the parties, although not expressed in the agreement, that no corrective action could be undertaken unless the property owners consented, for the obvious reason that any plan would involve a trespass on their properties. While there is some haggling over the matter, the overwhelming weight of the proof is to the effect that plaintiff sent a letter to each property owner outlining the proposed corrective plan and asking for individual consents. Before these letters were sent out the form thereof was submitted to the Director of Sanitation, and he not only approved of the form but suggested a cutoff date. Consents from the property owners were never received and in some instances they were refused.
Plaintiff thereafter sought, by this action, to recover back its deposit of $10,000 on the ground that, since the property owners, as third-party beneficiaries, refused their consent to the proposed corrective plan, it was relieved from its obligations under the agreement because performance was impossible. This is a commonly accepted principle of contractual law as exemplified by citations in the majority opinion, but the trial court refused to charge it clearly and specifically, and hedged it about with the restriction that before applying the rule the jury had to find that the agreement was made solely for the benefit of the property owners. This, in my opinion, was erroneous. It was sufficient for the application of the rule if the jury found that the property owners, as primary beneficiaries, refused consent. I can find no authority which holds that where a third-party beneficiary frustrates the performance of an agreement that the promisee is not bound thereby and the promisor released.
Plaintiff is denied the return of its deposit on the ground that it was a jury question whether it made reasonable efforts to get the consent of the property owners, and, if so, whether the houseowners, by their refusals, made performance impossible. It would seem, of necessity, that the answer to the last issue must be in the affirmative. No one has suggested how the *327 work could be done without the consents of the property owners. As to reasonable effort to get the consents, it is difficult to see what more the plaintiff should or could have done. It submitted “ Plan D ” approved by the defendant and, having done so, it was not obliged under any direct or implied obligation of the agreement to cajole or persuade the owners to accept it.
The use of letters, with the approval of the Director of Sanitation, for the purpose of obtaining consents was not only proper but eminently desirable since the nature of the corrective work proposed had to be stated with some precision.
As the situation now stands, plaintiff has lost its deposit and has no guarantee whatever that actions may not be taken against it by the property owners, for the county could not bar their rights, if any, by the agreement in question. And, by the same token, plaintiff may be faced with a renewal of charges of sanitary violations, for the power of the defendant to barter off such charges for the sum of $10,000 is dubious indeed.
The order should be reversed and a new trial granted.
Judges Dye, Fuld and Burke concur with Chief Judge Desmond; Judge Foster dissents in an opinion in which Judges Froessel and Van Voorhis concur.
Judgment affirmed.